D. S. SOODHALTER et al., Appellants, v. RELIANCE COAL COMPANY et al., Appellees.

**SALES:** Conditional Sales—Right of Forfeiture—Effect. Though the vendor in a conditional contract of sale has retained the right to forfeit the contract for nonpayment and to resume absolute ownership, yet, so long as he has not done so, his assignment of the contract invests the transferee with no greater right than the vendor had under the contract.

**JUDGMENT:** Conclusiveness—Failure to Appeal—Effect. A defendant who fails to appeal from any part of a decree which (1) established certain claims for labor (as contended for by plaintiff), but (2) held that such claims were not liens on certain property (as contended for by defendant), may not question the decretal establishment of said claims on a successful appeal by the plaintiff from the latter part of the decree.

Headnote 1: 35 Cyc. p. 695.   Headnote 2:   4 C. J. p. 695.

Headnote 1:  24 R. C. L. 478.

*Appeal from Des Moines Municipal Court.*—HERMAN F. ZEUCH, Judge.

APRIL 5, 1927.

Action in equity for the enforcement of liens for rent and labor and to determine priorities. The opinion states the facts. The plaintiff and the trustee in bankruptcy of the debtor appeal. —*Reversed and remanded.*

*Clinton R. Dorn* and *A. A. Rice,* for appellant.

*Jensen & Connolly*, for appellees.

VERMILION, J.—The Reliance Coal Company, a corporation, bought from one Searle four trucks, upon a conditional sale contract, which provided for certain payments to be made on the purchase price, and that, if default should be made therein, the contract might be forfeited and ended without notice at the election of Searle, and that he might, without process of law, take possession of the property. This contract was not of record. At the time of the transactions here involved, the Reliance Coal Company was in default, and $1,546 of the purchase price remained unpaid, being a balance of a note for $2,400 therefor. The Reliance Coal Company rented of the plaintiff Soodhalter, under a written lease, a garage in which the trucks were kept. The lease provided:

1. SALES: conditional sales: right of forfeiture: effect.

"And the undersigned party of the second part (as security in addition to the lien given by law) hereby sells and conveys to the party of the first part all merchandise, goods manufactured or unmanufactured, machinery, tools, supplies, apparatus, furniture and fixtures and all personal property of every kind and nature whatsoever, brought, kept and used upon said premises, and warrant the title to said property against all persons whomsoever; said sale and conveyance to be void upon condition that the rent, damages sustained by any breach of covenants in this lease, costs, expenses, attorney's fees, etc., be paid promptly and full as herein provided."

The lease also provided that, upon default, the instrument might be foreclosed, as provided by law for the foreclosure of chattel mortgages. The lease was not of record. At the time of the transactions in question, rent to the amount of $65 was due under the lease. The Reliance Coal Company was also indebted to certain employees for wages for labor in the sum of $310.37. These claims were assigned to Soodhalter.

On the evening of July 16, 1925, there was a conference between Searle, J. C. Ramsey, representing the Reliance Coal Company, and J. H. Ramsey, representing the Economy Coal Company, at which the financial difficulties of the Reliance Coal Company and Searle's claim under the conditional sale contract were discussed. On the following day, a written agreement was

entered into between Searle, as first party, and the Economy Coal Company, as second party, the material part of which is as follows:

"The first party hereby sells, transfers and assigns to second party all of his right, title and interest in and to a certain contract of date September 25, 1924, whereby first party sold to J. C. Ramsey, et al., four certain two and one-half ton model J. Gary trucks, Nos. 97122, 78807, 78602 and 78343; also conveying and transferring all of his right, title and interest in and to said trucks.

"The consideration therefor is the sum of $1,000 of which the second party has this day paid the sum of $500, receipt whereof is hereby acknowledged by first party, and the remaining $500 shall be paid to the first party on or before October 17, 1925.

"First party hereby retains a lien on said contract and on the said trucks to secure the said deferred payment of $500."

On the same day, or early on the morning of the following day, the trucks were removed from Soodhalter's garage, and taken to the premises of the Economy Coal Company. Later on the same day, Soodhalter commenced this action in equity for the enforcement of a lien, both under the statute and under his contract of lease, for the rent due, and also for the amount of the labor claims which he held by assignment; and the trucks were levied on under a landlord's attachment issued in this action. Soodhalter caused to be served on the officer who levied the attachment a verified statement of the labor claims held by him, and filed such statement with the clerk, and asked the allowance thereof as a preferred claim against the property seized under the writ.

The Reliance Coal Company was thereafter adjudged a bankrupt, and J. L. Stark was appointed trustee. The trustee appeared herein, and claimed the attached property for the benefit of creditors of the bankrupt, subject to the liens against it.

The Economy Coal Company answered, claiming to be the owner and in possession of the trucks at the time suit was instituted, and denying that Soodhalter had a lien thereon.

The lower court found and decreed that the Economy Coal Company was the owner of the trucks, subject only to a lien to

the amount of $65 for rent; that the labor claims held by Sood-
halter (without determining the amount thereof) were prior
and superior to the claim for rent; and that the $65 should be
first applied to the payment of the labor claims. Soodhalter and
the trustee in bankruptcy of the Reliance Coal Company have
appealed.

I. It is conceded by all parties that the principal question
in the case is whether the Economy Coal Company acquired
from Searle only the rights which the latter had under his con-
ditional sale contract with the Reliance Coal Company, or such
rights as he would have had in the trucks if that contract had
been forfeited by him and all the rights of the purchaser there-
under terminated. The appellees contend that the contract had
been in fact forfeited by Searle. We may concede, without,
however, so deciding, that Searle might have forfeited the con-
tract and cut off the rights of the Reliance Coal Company in the
property; and that thereby he would have become the absolute
owner of the trucks, free from any claim or interest on the part
of the purchaser under the contract.

The ultimate question is not to be determined alone by what
Searle said as to his purpose or intention before the execution of
the contract with the Economy Coal Company. His only con-
cern, as appeared from his own testimony, was to secure the
money due him, or as large a part thereof as possible. The
Reliance Coal Company was in default, and Searle was informed
that it could not make the payments due under the contract. He
declared his intention to forfeit the contract. The Reliance Coal
Company was in no position to resist any such action he might
take, and he was so advised. He did not take possession of the
trucks, and did not want possession of them, because of the ex-
pense of storing them. This was the situation when he executed
the contract with the Economy Coal Company. It is, of course,
true that, although he may then have had a right to forfeit the
contract, and the purchaser was not resisting its exercise, he
might sell and assign his interest in the contract, without for-
feiting it.

It is clear that the Economy Coal Company acquired what-
ever right it had to the trucks under and by virtue of its con-
tract with Searle. This was, in terms, an assignment by Searle
of his right, title, and interest in the conditional sale contract.

It is said that it conveyed and transferred also his right, title, and interest in the trucks themselves. But, so long as the conditional sale contract was in force, his interest in the trucks was such, and such only, as was secured to him by that contract. If there had been a previous effective forfeiture of the contract by Searle, and he was then the owner of the trucks, free from any claim by the purchaser under the contract, the contract was at an end, and there was nothing thereunder to be assigned. The source of Searle's title, in such case, was not the contract,

2. JUDGMENT: con-clusiveness: failure to appeal: effect. but the forfeiture thereof. Again, if the contract was forfeited, not only was the interest of the Reliance Coal Company in the trucks terminated, but its liability for the unpaid purchase price was at an end. But the contract and the note for the purchase price were not surrendered to the Reliance Coal Company, but were delivered to the Economy Coal Company. Furthermore, in the contract with the Economy Coal Company, Searle was expressly given a lien, not only on the trucks, but on the conditional sale contract, to secure the balance due him from the Economy Coal Company. Each of these circumstances is inconsistent with the contention that that contract had previously been forfeited, and that Searle was selling the trucks, and not the contract.

The Economy Coal Company took possession of the trucks, but there is no claim that that company, after the assignment to it, forfeited the contract.

We conclude that the rights of the Economy Coal Company in the trucks are to be measured by the terms of its contract with Searle; that there had been no forfeiture of his contract with the Reliance Coal Company; and that it acquired only such rights as Searle had under that contract, and not the absolute ownership of the trucks.

II. The decree, from which the Economy Coal Company has not appealed, is conclusive on the proposition that the claim for rent was a lien superior to any right which that company had in the trucks, and, also, upon the further proposition that the seizure of the trucks under the landlord's attachment was rightful. Section 11717, Code of 1924, provides that, when the property of any corporation shall be seized upon by any process of any court, or seized by the action of creditors, for the purpose of paying or securing the payment of the debts of such corpora-

tion, the debts owed to employees for labor performed within the 90 days next preceding the seizure of such property, to an amount not exceeding $100 to each person, shall be a preferred debt and paid in full.

The lien is purely statutory, and is unaffected by the recording acts, or the character of the prior liens. It attaches, when the property of the debtor is seized under process for the payment of its debts, in favor of the persons, for the debts and to the extent specified in the statute. We do not understand appellees to contend that, as against the Economy Coal Company, as the assignee of the rights of Searle under the conditional sale contract, a claim by an employee of the Reliance Coal Company for labor performed within 90 days before the seizure of the trucks under the attachment, to the extent of $100, would not have been entitled to a preference. See *Anundsen v. Standard Printing Co.*, 129 Iowa 200. They do contend, however, that the claims held by Soodhalter were not established, and that there was no evidence that the labor upon which the claims were based was performed within 90 days, or that individual claims did not exceed $100.

The aggregate amount of the claims was conceded on the trial. The decree established them, and gave them priority over the claim for rent. Unless they were for labor performed within 90 days, and did not exceed $100 for each person, they were not entitled to preference or priority at all. They were not established as liens against the trucks, for the reason only that the lower court held that the trucks were not the property of the Reliance Coal Company when seized under the attachment, although they were subject to the lien for rent.

The appellees, by failing to appeal therefrom, are concluded by the decree establishing the labor claims and fixing their character; and this is true although the lower court held, erroneously, as we conclude, that they were not liens on the trucks.

III. Appellees do not appear to question the right of the trustee in bankruptcy of the Reliance Coal Company to subject the trucks, subject to the valid liens thereon, to the payment of general creditors, save as they contend that the Economy Coal Company was the owner thereof. It follows from our conclu-

sion on that question that the trustee was entitled to the relief asked.

... We hold that the appellant Soodhalter is entitled to a first lien on the trucks for the amount of the labor claims held by him, $310.37 and interest; that his claim for rent, as found by the lower court, is a second lien thereon; that the Economy Coal Company is entitled to a third lien for the amount due and unpaid on the conditional sale contract; and that the trustee in bankruptcy is entitled to any balance.

The decree is reversed, and the cause remanded for a decree in accordance herewith.—*Reversed and remanded.*

EVANS, C. J., and STEVENS and FAVILLE, JJ., concur.